## IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **E.W.B.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Case No. CIV-25-108-ALM** |
| | ) |
| **FRANK BISIGNANO,** | ) |
| **Commissioner of Social Security,**[1] | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

E.W.B.[2] ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of the Social Security Administration

("SSA") denying his applications for disability insurance benefits ("DIB") and

supplemental security income ("SSI") under Title II and Title XVI of the Social Security

Act, 42 U.S.C. §§ 401-34, 1382. (Doc. 1). The Commissioner filed the Administrative

Record ("AR") (Doc. 7), and the parties have fully briefed the issues. (Docs. 15, 20).[3] The

parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28

---

[1] Frank Bisignano was sworn in as the Commissioner of the Social Security Administration on May 7, 2025, and is therefore substituted as Defendant in this matter, pursuant to Federal Rule of Civil Procedure 25(d).

[2] For privacy purposes in light of the sensitive information disclosed in Social Security cases, the Court refers to Plaintiff by initials only.

[3] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

U.S.C. § 636(c)(1).  (Docs. 11, 12).  Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

## I.        The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 423(d)(3).  A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment.  20 C.F.R. §§ 404.1521, 416.921; *see id.* §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a).  A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-

51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[4] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id*. "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r,*

---

[4] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

*SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (defining substantial evidence as "more than a scintilla, but less than a preponderance"). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). But "an agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli*, 84 F.4th at 905.

## II.   Procedural History

Plaintiff filed applications for DIB and SSI on June 10, 2022, alleging a disability onset date of March 15, 2022. (AR, at 68-69). The SSA denied the applications initially and on reconsideration. (*Id*. at 115-34, 136-51). An administrative hearing was held on April 18, 2024. (*Id*. at 38-67). Afterwards, the Administrative Law Judge ("ALJ") issued

a decision finding that Plaintiff was not disabled. (*Id*. at 15-30). The Appeals Council subsequently denied Plaintiff's request for review. (*Id*. at 1-6). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

## III.    The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 15, 2022, the alleged onset date. (AR, at 17). At Step Two, the ALJ determined Plaintiff suffers from the severe medically determinable impairments of lumbar degenerative disc disease and spondylosis, cervical spondylosis, gout, and obesity. (*Id*.) The ALJ also found that Plaintiff has the non-severe medically determinable impairments of vision impairment, colon/gastrointestinal issues, and adjustment disorder. (*Id*. at 18-20). The ALJ found that Plaintiff's headaches were "not clearly shown to be a 'medically determinable' impairment." (*Id*. at 21).

At Step Three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the listed impairments. (*Id.* at 21). The ALJ then determined that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with standing and/or walking for a total of six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday, except occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; occasional overhead reaching; and must avoid . . . concentrated exposure (no more than frequent) to hazards (moving mechanical parts and unprotected heights).

(*Id.* at 22-23). Then, at Step Four, the ALJ found Plaintiff could not perform any past relevant work. (*Id.* at 28). At Step Five, however, the ALJ found Plaintiff could perform

jobs existing in significant numbers in the national economy, such as cashier, receptionist

and information clerk, and maid/housekeeper/cleaner. (*Id.* at 29-30). Thus, the ALJ found

that Claimant had not been under a disability since March 15, 2022. (*Id.* at 30).

## IV.    Claim Presented for Judicial Review

Plaintiff contends the ALJ erred by failing to properly evaluate Plaintiff's subjective

statements. (Doc. 15, at 8-12). Plaintiff further asserts the ALJ's assessment of Plaintiff's

RFC was flawed and not supported by substantial evidence. (*Id.* at 12-15).

The Commissioner argues that the ALJ's symptom analysis and RFC determination

were legally sound and supported by substantial evidence. (Doc. 20, at 4-13).

The Court agrees with the Commissioner.

## V.    The ALJ Conducted an Appropriate Symptom Analysis, and the RFC Is Supported By Substantial Evidence.

### A.    The SSA's Framework for Analyzing Symptoms

> The Commissioner has a two-step process for evaluating a claimant's
> symptoms, that is, his or her subjective statements about his or her
> impairments and limitations. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25,
> 2017). At the first step, the ALJ determines whether the claimant has a
> medically determinable impairment that could reasonably be expected to
> produce the pain or other symptoms alleged. *Id*. at *3. If so, at the second
> step, the ALJ "evaluate[s] the intensity and persistence of [the claimant's]
> symptoms . . . and determine[s] the extent to which [a claimant's] symptoms
> limit his or her ability to perform work-related activities." *Id*. at * 4. In
> making this evaluation, the ALJ considers the medical evidence of record,
> along with several factors, including the claimant's activities of daily living.
> *See id*. at *7.

*James v. Comm'r, SSA*, 2024 WL 1133442, at *3 (10th Cir. Mar. 15, 2024).

With regard to the second step of this analysis, the SSA states:

> [i]n considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

Soc. Sec. Ruling ("SSR") 16-3p: Titles II & XVI: Evaluation of Symptoms in Disability

Claims, 2017 WL 5180304, at *4 (S.S.A. Oct. 25, 2017). With respect to consideration of

objective medical evidence, the SSA explains that

> [s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques. However, objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . . . We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record.
>
> . . .
>
> However, we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual. A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms.
>
> If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms. Other evidence that we will consider includes statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms, including agency personnel, as well as the factors set forth in our regulations.

7

*Id.* at * 5-6 (footnotes omitted).   The SSA regulations direct the ALJ to consider the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant has received to relieve pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions.  *Id.* at *7-8; *see* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

> **B.**      **The ALJ Analyzed Objective Medical Evidence As Well As Other Factors and Explained How He Weighed It Against Plaintiff's Subjective Statements.   This Constitutes an Appropriate Symptom Analysis and Substantial Evidence To Support the RFC.**

Plaintiff argues that the ALJ failed to properly evaluate his subjective statements about his physical symptoms.[5]  (Doc. 15, at 8).   Plaintiff asserts that the ALJ "relied solely on the objective medical evidence to justify discounting [Plaintiff's] subjective statements."  (Doc. 15, at 10).   He further asserts that the ALJ did not provide enough explanation of his symptom analysis because he did not specifically relate his conclusions

---

[5] Plaintiff's arguments focus on the alleged physical symptoms related to his spinal problems. (Doc. 15, at 11, discussing a "limited daily routine" of physical inactivity and limitations; discussing subjective statements about "limitations to minimal amounts of lifting, carrying, standing, walking, and sitting," as well as knee problems; *id*. at 12, discussing pain related to standing, walking, and sitting). Accordingly, the undersigned will not analyze the ALJ's treatment of Plaintiff's mental symptoms, gastrointestinal symptoms, or visual symptoms arising from his non-severe impairments. (*See* AR, at 18-20).  The undersigned finds that Plaintiff's brief attack of the ALJ's assessment of Plaintiff's headaches as not a medically determinable impairment, (Doc 15, at 12 n.2), is a request to re-weigh the evidence, which this court cannot do, *Vigil*, 805 F.3d at 1201, and so likewise does not address Plaintiff's headache symptoms.

to Plaintiff's statements about his "limited daily routines" or about perceived limitations as to lifting, carrying, standing, walking, and sitting.  (*Id*. at 11).  The undersigned disagrees and finds that the ALJ appropriately considered objective medical evidence and other factors and then provided an explanation of his conclusions that shows he considered Plaintiff's statements.

The ALJ's decision first detailed Plaintiff's self-reported symptoms, which were obtained from Adult Function Reports in August and December 2022 and from Plaintiff's April 2024 hearing testimony, as follows:

> difficulty squatting, bending, walking, and changing positions. . . . [Plaintiff] estimated he could walk about 40 to 50 feet before having to rest about 10 minutes. He could lift only 10 pounds and had difficulty with bending and reaching.

(AR, at 23).

> [Plaintiff] testified to pain and tingling in his legs, limited mobility in his neck, and knee problems.  He described his legs as in constant, shooting pain, and feeling like they were being stung by bees. [Plaintiff] indicated he has collapsed and fallen due to his symptoms. . . .
>
> . . . He also described pain when tilting his head to the side. . . . He also asserted he sometimes gets tingling and numbness in his arms and hands, causing him to drop things. [Plaintiff] further testified his lower back pain was worse than his neck pain, and primarily caused problems with standing and walking. [Plaintiff] asserted a Dr. Conly has restricted him to lifting/carrying five to 10 pounds, but he tries to no lift/carry that much. [Plaintiff] estimated he can stand 10 to 15 minutes, sit 20 to 30 minutes, and walk five to 10 minutes. He tries to help his wife with chores but cannot do much before needing to sit down.  He spends most of his day, 80 to 90 percent, in his recliner. [Plaintiff] denied any hobbies or interests, but indicate he tried to do a little fishing with his son. [Plaintiff] continues to go shopping but uses a cane and needs a cart when in Walmart. He estimated he can walk with the cart for only five minutes, but then must squat down or sit for a minute.

(*Id.* at 24). The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*)

In accordance with SSA guidance, the ALJ first appropriately looked to the objective medical evidence and found it did "not corroborate[]" Plaintiff's statements about his symptoms. (*Id.*) The ALJ noted that Plaintiff had a 2001 neck surgery and a history of neck pain since 2020, and then a motor vehicle accident on March 15, 2022, where he reported to the emergency room with neck and back pain and muscle spasms, but showed normal gait, ranges of motion, strength, and sensation. (*Id.* at 24-25). The ALJ then provided a detailed summary of the medical record, noting objective evidence that related to Plaintiff's symptoms and showed contemporaneous abnormal[6] and normal[7] findings

---

[6] Including "unbearable cervical and lumbar area pain;" tenderness, pain, and limited range of motion in the neck and back; extremity strength deficits in the right wrist and fingers (April 2022); spine MRI showing disc degeneration and severe bilateral degenerative foraminal stenosis (May 2022); neck and back pain, tingling and weakness in the right leg, mild right antalgic gait, back and neck tenderness and decreased ranges of motion (June 2022); right knee pain and swelling, knee MRI showing inflammatory process and crystalline arthropathies (November 2022); left foot pain and swelling due to gout (January 2023); neck and back pain, positive straight leg test bilaterally, multilevel degenerative disc disease (February 2023).

[7] Including intact 5/5 strength in upper and lower extremities, intact sensation, normal gait, no need for assistive device (April 2022); spine MRI showing mostly mild spondylosis and stenosis but no compression fracture or acute abnormality (May 2022); no pain, numbness, or tingling in upper extremities; normal gait pattern and tandem gait, intact 5/5 strength in upper and lower extremities (June 2022); normal gait and stance (January 2023); normal

throughout the time period from April 2022 through January 2024. (*Id*. at 25-27). The ALJ specifically noted that "the medical evidence does not show [Plaintiff] to have any difficulty using his hands or arms or significant gait disturbances continuously since the March 2022 accident, or show the claimant to use or require a cane or other assistive device." (*Id*. at 22).

The ALJ also incorporated relevant regulatory factors, and summarized the types of medication, treatments, and other measures that Plaintiff had received or been advised to use to address his symptoms. Significantly, Plaintiff received a lumbar epidural steroid injection in June 2022, and by July 2022 reported a 75 percent improvement. (*Id*. at 25). A doctor recommended disc surgery or replacement, but Plaintiff did not undergo surgery perhaps due to lack of insurance or because his wife was working and would not be home to help him. (*Id*. at 23; 25; 26). Plaintiff reported back pain in October 2022, but it was noted that he was not doing home exercises or stretching. (*Id*. at 25-26). In December 2022, Plaintiff's primary care doctor saw him for gout and instructed him to "drink less sweet tea, rest and elevate[] his foot, and increase [medication]." (*Id*. at 26). In February 2023, an orthopedist saw Plaintiff for his neck and back pain, and he recommended a lumbar corset for extra support and protection for re-injury, and he was instructed to engage in weightbearing and activities as tolerated. (*Id*. at 26).

The ALJ's opinion noted Plaintiff's reported daily activities, as stated above, but also Plaintiff's reports that he "was sometimes able to prepare meals and perform chores,

---

gait and coordination, intact reflexes and sensation, no edema (February 2023); slow but steady and intact gait; pleasant, smiling, comfortable, in no distress (April and July 2023).

with breaks. . . . [H]e continued to drive, go out alone, shop in stores, and put gas in his

car." (*Id*. at 23).   As prescribed by the SSA, the ALJ went on to consider "other sources

that might have information about the individual's symptoms, including agency

personnel." SSR 16-3p, 2017 WL 5180304, at *5-6.  Indeed, two state agency consultants

found Plaintiff "retained the ability to perform a full range of light level work, with lifting

and/or carrying up to 20 pounds occasionally, 10 pounds frequently; standing and/or

walking about six hours in an eight-hour day; sitting about six hours in an eight-hour day;

no limitations on pushing or pulling other than those listed under lifting and/or carrying."

(AR, at 27).  The ALJ found this assessment was "persuasive because it is consistent with

the overall record." (*Id*.)  The ALJ explained,

> [a]s noted, [Plaintiff] was abnormal on examination in the months following
> the motor vehicle accident, but by about late 2022, was typically described
> as intact as to gait, strength, sensation, and reflexes.  While [Plaintiff's]
> combination of impairments could reasonably support a restriction to light
> level work, [his] lumbar and cervical degenerative changes would also
> support certain limitations in postural activities and reaching, as set forth in
> the above residual functional capacity.

(*Id*.) (record citations omitted).

Finally, the ALJ provided an explanation of how he weighed Plaintiff's self-

reported symptoms against the objective medical evidence, evidence of medications and

treatments, evidence of daily activities, and the opinions of the state agency consultants:

> Based on the foregoing, the undersigned finds [Plaintiff] has the above
> residual functional capacity assessment, including light exertion limitation,
> which is supported by his combination of impairments, primarily cervical
> and lumbar degenerative disc disease.  While [Plaintiff's] spinal symptoms
> could reasonably interfere with his ability to perform more strenuous types
> of work, the treatment records show his acute spinal exacerbations improved
> after the March 2022 motor vehicle accident. In subsequent records,

[Plaintiff] was shown to be improved and typically unremarkable on examinations, including intact gait, strength, and/or sensation. [Plaintiff's] persistent symptoms would also warrant restriction to no more than occasional postural activities, with no climbing ladders, ropes, and scaffolds, and occasional overhead reaching. He should also avoid concentrated exposure (no more than frequent) to hazards due to possible instability due to his spinal conditions. Accordingly, since the alleged onset date, [Plaintiff] is found to retain the functional abilities set forth in the above residual functional capacity.

(*Id.* at 28).  This explanation refers to Plaintiff's "spinal symptoms" that are "persistent," which is sufficient to show that the ALJ had in mind the various subjective statements Plaintiff made about his limitations.  The explanation likewise shows how the ALJ found that Plaintiff was not disabled and crafted the RFC to accommodate Plaintiff's symptoms.

In summary, the ALJ utilized the appropriate factors and articulated a symptom analysis that was supported by substantial evidence.  Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008).

Plaintiff's argument that the ALJ's assessment of Plaintiff's RFC was flawed and not supported by substantial evidence fails for similar reasons. (*See* Doc. 15, at 12-15). Plaintiff asserts that an RFC assessment should "be supported by a narrative discussion citing specific medical and non-medical evidence and describing how that evidence supports the conclusions reached therein." (*Id.* at 13, citing SSR 96-8p).  The ALJ provided such a discussion, as described above.  Plaintiff's argument on this point merely highlights objective medical evidence and symptoms that could arguably support a finding of disability. (*Id.* at 14-15).  But this is a request for this Court to re-weigh the evidence and

come to a conclusion different than the ALJ.  This Court must decline that request.  *Vigil*,

805 F.3d at 1201 (holding that the court will "neither reweigh the evidence nor substitute

[its] judgment for that of the agency") (internal quotation marks omitted).  "The ALJ was

entitled to resolve [ ] evidentiary conflicts and did so." *Allman v. Colvin*, 813 F.3d 1326,

1333 (10th Cir. 2016).

## VI.    Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative

hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the Court

**AFFIRMS** the decision of the Commissioner.

**IT SO ORDERED** this 10th day of March, 2026.

_____
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE